910 So.2d 1123 (2005)
Johnny LEE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02523-COA.
Court of Appeals of Mississippi.
March 22, 2005.
*1124 David L. Tisdell, Tunica, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before BRIDGES, P.J., IRVING and MYERS, JJ.
MYERS, J., for the Court.
¶ 1. Johnny Lee was charged with two counts of attempted rape under Mississippi Code Annotated § 97-1-7 and one count of statutory rape under Mississippi Code Annotated § 97-3-65(1)(b). On August 7, 2003, he was convicted on all three counts. On October 16, 2003, he was sentenced to life in prison for the count of statutory rape with concurrent sentences of ten years imposed for each of the counts of attempted rape. On August 13, 2003, Lee filed a motion for JNOV or, in the alternative, for new trial, and on August 18, 2003, the court denied this motion. Lee now appeals, raising the following three issues:
I. DID THE TRIAL COURT ERR IN REFUSING TO GRANT LEE'S MOTION FOR JNOV OR IN THE ALTERNATIVE FOR A NEW TRIAL BASED UPON THE STATE'S FAILURE TO PROVE VENUE IN THE CASE?
II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT LEE'S MOTION FOR JNOV OR IN THE ALTERNATIVE FOR A NEW TRIAL BASED UPON IMPROPER COMMENTS MADE BY THE STATE IN CLOSING ARGUMENTS?
III. DID THE TRIAL COURT ERR IN REFUSING TO GRANT LEE'S MOTION FOR JNOV OR IN THE ALTERNATIVE FOR A NEW TRIAL BASED UPON THE WEIGHT OF THE EVIDENCE?

FACTS
¶ 2. Lee is the step-grandfather of the victim, S.W. At the time of the first two incidents in question, S.W. was eleven years old; however, the last incident occurred on S.W.'s twelfth birthday. According to S.W.'s testimony, on July 5, 2002, Lee attempted to have sex with her. She also testified that on July 9, 2002, Lee succeeded in having sex with her. On both of these occasions, Lee was driving S.W. to her grandmother's house, when he pulled off the road (both times in remote areas) and committed the acts of sexual abuse upon her. On August 13, 2002, under similar circumstances, Lee again attempted to have sex with S.W.; however, S.W. struggled, causing Lee to desist. These were the three specific incidents covered by the indictment in this case; *1125 however, there was some indication that this behavior of Lee towards S.W. had been ongoing. After a time, S.W. came forward with her charges. She stated that she delayed in coming forward because Lee told her that he had killed someone before, and she took this statement to be a threat.
¶ 3. S.W. was prompted to come forward about what had been happening to her when Lee's wife, Mae Ella, asked S.W. if she had been abused. Mae Ella's suspicions (that prompted such a difficult question) were triggered when she witnessed several strange incidents involving Lee and S.W. For instance, after the July 9, 2002 incident, Mae Ella returned home to find S.W. wearing Mae Ella's clothes. When she inquired about this, Lee said that he had instructed S.W. to take a bath and that he had given S.W. some of Mae Ella's clothes to wear. Lee did not explain why he had done this. On another occasion, Mae Ella returned home to find Lee, wearing only his boxer shorts, alone inside with S.W. with all of the doors to the house locked. These kinds of strange circumstances brought about Mae Ella's suspicions. When she finally approached S.W. and asked her what had been happening, Mae Ella's suspicions were confirmed.
¶ 4. S.W. was examined by Dr. Waller, a doctor with experience in child sexual abuse cases, and he concluded that S.W. had been sexually abused. In particular, Dr. Waller's examination revealed that S.W. showed signs of having been penetrated. S.W. was also counseled on numerous occasions by Dr. Lisa Phelps, a psychologist with expertise in the area of child sexual abuse. Dr. Phelps also concluded that S.W. had been sexually abused. After noting that she had dealt with cases in which the alleged victim was found to be lying, Dr. Phelps testified that, based upon her experience, there was no doubt in her mind that S.W. was telling the truth.
¶ 5. Based upon the testimony of another doctor, Dr. Irene Buckner, who examined S.W. on May 10, 2002, it appeared that S.W. may also have been abused sometime before July 5, 2002. However, at least some of this apparent prior abuse may not have been connected to Lee, and the jury ultimately found that this possibility of prior abuse, perhaps by someone other than Lee, did not create a reasonable doubt as to whether Lee committed the specific acts of abuse for which he was charged in the indictment.

LEGAL ANALYSIS

I. DID THE TRIAL COURT ERR IN REFUSING TO GRANT LEE'S MOTION FOR JNOV OR IN THE ALTERNATIVE FOR A NEW TRIAL BASED UPON THE STATE'S FAILURE TO PROVE VENUE IN THE CASE?
¶ 6. Lee argues that the State failed to prove that the incidents took place in Coahoma County, and that, since venue is an essential part of criminal prosecution, the court should have granted his motion for JNOV or, in the alternative, for a new trial. The State argues that it did, in fact, prove venue, because S.W.'s testimony regarding the location of the incidents was sufficient to prove venue.

STANDARD OF REVIEW
¶ 7. Our standard of review of issues related to motions for JNOV and/or new trial has been stated as follows:
Challenges to the sufficiency of the evidence (raised by motions for directed verdict and for JNOV) and challenges to the weight of the evidence (raised by motions for a new trial) raise similar issues. This Court has set forth the standards for the challenges to the former as follows: Our standards of review for a denial of a judgment notwithstanding the verdict and a directed verdict *1126 are also identical. Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Cousar v. State, 855 So.2d 993, 998 (¶ 14) (Miss.2003) (citations omitted).
¶ 8. We have also held in this regard:
The appellate court must accept as true all evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Swann v. State, 806 So.2d 1111, 1117 (¶ 25) (Miss.2002). On review, the State is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992). The appellate court should not reverse a guilty verdict unless failure to do so would sanction an unconscionable injustice. Hilliard v. State, 749 So.2d 1015, 1016-17 (¶ 10) (Miss.1999). "This Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible." Langston v. State, 791 So.2d 273, 280 (¶ 14) (Miss.Ct.App.2001).
McCoy v. State, 881 So.2d 312, 314 (¶ 7) (Miss.Ct.App.2004). Thus, our standard of review of issues relating to motions for JNOV and/or a new trial is very deferential to the trial court's judgment.

DISCUSSION
¶ 9. S.W., in response to questions on direct and cross-examination, testified that the incidents took place in Coahoma County, and, based upon this, the jury concluded that the incidents took place within Coahoma County.
¶ 10. We can find no reversible error in this conclusion. As Lee correctly notes, the State bears the burden of proving venue beyond a reasonable doubt. Hill v. State, 797 So.2d 914, 916 (¶ 10) (Miss.2001). Direct or circumstantial evidence may be used to prove venue. Id. Our review of the record in the present case indicates that there was direct evidence to establish venue in Coahoma County and that there was no evidence to the contrary. As noted above, S.W. testified that the incidents took place within Coahoma County. Specifically, S.W. testified that one of the incidents took place near Lyons School, one of the Coahoma County public schools, and that the other incidents took place in Coahoma County. The jury found this testimony to be credible.
¶ 11. We find nothing in the record to prompt us to question this finding of the jury. Not only do we find nothing in the record to call into question S.W.'s testimony on venue, but we also find circumstantial evidence in the record to support her testimony. Although this fact was not specifically brought out below, S.W.'s testimony indicates that the incidents took place en route to and from locations within Coahoma County. Thus, the jury reasonably may have inferred that Lee and S.W. did not leave the county in order to travel between two points within the county. As noted, this fact was not specifically brought out at the trial; however, this inference is certainly reasonable in light of *1127 S.W.'s uncontradicted testimony about the circumstances surrounding the incidents.
¶ 12. A similar inference was found to be sufficient proof of venue in the Hill case, cited above. Id. The relevant evidence in the Hill case involved a statement made by the defendant that referenced a particular exit off of the interstate that was known to lie within a particular county. Id. at 916-17 (¶¶ 12-14). The court there found this statement to provide sufficient proof of venue to justify affirming the lower court's decision. Id. The analogy from this aspect of the Hill case to the case sub judice goes to the testimony of S.W. referencing (1) the Lyons Elementary School, which is located within Coahoma County, and (2) the fact that the acts of abuse took place while en route to and from locations within Coahoma County. Under the holding in Hill, these two facts from S.W.'s testimony would likely have been sufficient by themselves to prove venue, but in the case sub judice we have, in addition to these two facts, the specific testimony of the victim that all of the events took place in Coahoma County.
¶ 13. Thus, given what we find in the record, we conclude that the jury made a reasonable determination of venue based upon the evidence presented. In light of this, we can not say that the court abused its discretion in refusing to grant a new trial based upon Lee's arguments about venue. Therefore, we find this issue to be without merit.

II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT LEE'S MOTION FOR JNOV OR IN THE ALTERNATIVE FOR A NEW TRIAL BASED UPON IMPROPER COMMENTS MADE BY THE STATE IN CLOSING ARGUMENTS?
¶ 14. Lee argues that the trial court should have granted his motion for JNOV or, in the alternative, for a new trial due to improper comments made by the prosecution in closing arguments. The State argues that Lee did not properly object and seek a mistrial or a limiting instruction and that, therefore, this issue lacks merit.

STANDARD OF REVIEW
¶ 15. Since this issue also goes to the denial of the motion for JNOV or, in the alternative, for a new trial, the standard of review is the same as for Issue I above. Cousar, 855 So.2d at 998 (¶ 14); McCoy, 881 So.2d at 314 (¶ 7).

DISCUSSION
¶ 16. In its closing argument, the State once referred to Lee as a "sophisticated criminal." Lee made an objection, specifically to the use of the word "criminal," since Lee had not yet been convicted of the crime. The trial judge responded, "Let's rephrase it and move on." The closing arguments were then completed, the jury was sent out to deliberate, and the verdict was rendered. Yet, after the initial objection to the word "criminal," Lee made no other mention of the matter until filing his motion for JNOV or, in the alternative, for a new trial. In his brief, Lee correctly notes that the court failed to admonish the jury to disregard the statement and to poll the jury to see if any of the jurors would have trouble disregarding the statement. However, Mississippi law places the burden upon counsel to request that the court issue such an admonition and conduct such a polling after an improper comment is made in closing argument.
¶ 17. The case of Johnson v. State, 477 So.2d 196, 209-10 (Miss.1985), illustrates this principle. The court there said, "[I]t *1128 is the duty of a trial counsel, if he deems opposing counsel [is] overstepping the wide range of authorized argument, to promptly make objection and insist upon a ruling by the trial court. The trial judge first determines if the objection should be sustained or overruled. If the argument is improper and, the objection is sustained, it is the further duty of trial counsel to move for a mistrial." Id. The Johnson court then goes on to say that if the lower court rules that a statement was improper, the lower court must then admonish the jury to disregard the statement, unless the statement caused serious and irreparable damage; in that case, the trial judge may grant a mistrial. Id. But, at the outset, opposing counsel has the duty to object promptly and to "insist" that the judge rule on the issue and admonish the jury. Id.
¶ 18. Our review of the record reveals that, while Lee's counsel did object to the prosecution's use of the word "criminal" in closing argument, he did not insist upon a ruling or an admonition to the jury, he did not move for a mistrial or limiting instruction, and he did not revisit the issue at any other point in the proceedings until the motion for JNOV or, in the alternative, for a new trial, which was filed after the verdict had already been rendered. Lee's counsel made his objection by saying, "Your Honor, I'm going to object to him referring to my client as a `criminal.' He has not been convicted of a crime." After making this statement, the trial judge declared, "Let's rephrase it and move on." There is no other mention of the issue until Lee's post trial motion.
¶ 19. We find that even if the prosecutor's remarks were improper, Lee has failed to preserve this error for review, since he failed to fulfill his duty to request a ruling from the trial court and an admonition to the jury after objecting to the prosecutor's statement. With that said, however, we do note, in conclusion, that the particular statement at issue does not strike us as a statement that caused serious and irreparable damage to Lee's case. Far more damaging to Lee's case was the actual evidence put on by the State, and we cannot say that this passing comment made in closing argument (which comment was addressed by the trial judge at least in some fashion and not subsequently repeated by the prosecution) so prejudiced Lee as to warrant a new trial.
¶ 20. Therefore, we find this issue to be without merit.

III. DID THE TRIAL COURT ERR IN REFUSING TO GRANT LEE'S MOTION FOR JNOV OR IN THE ALTERNATIVE FOR A NEW TRIAL BASED UPON THE WEIGHT OF THE EVIDENCE?
¶ 21. Lee argues that the jury verdict was against the weight of the evidence and that, therefore, the trial court should have granted Lee's motion. The State argues that the verdict was supported by the evidence.

STANDARD OF REVIEW
¶ 22. Since this issue challenges the weight of the evidence in support of the verdict, our standard of review is the same as stated above with respect to motions for new trial, which challenge the weight of the evidence. Cousar, 855 So.2d at 998 (¶ 14); McCoy, 881 So.2d at 314 (¶ 7). More specifically in this regard we have held:
This Court's standard of review for claims that a judgment is against the overwhelming weight of the evidence is as follows: In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports *1129 the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict.
Cousar 855 So.2d at 998 (¶ 15) (citations omitted).
¶ 23. We have also held, "This Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible." McCoy, 881 So.2d at 314 (¶ 7).
¶ 24. Thus, here again, as with the other issues, our standard of review is very deferential to the jury's verdict.

DISCUSSION
¶ 25. The evidence offered by the State to prove its case consisted of at least the following: the sworn and uncontradicted testimony of the victim, the sworn testimony of Lee's wife, who corroborated the victim's testimony, the expert opinion of a qualified physician who examined the victim and corroborated her testimony, and the expert opinion of a qualified psychologist who examined the victim and corroborated her testimony. Accepting this evidence as true and viewing this evidence in the light most favorable to the verdict, we can not say that the verdict was contrary to the overwhelming weight of the evidence. On the contrary, given our review of the record, this evidence leads us to conclude that the verdict is supported by the weight of the evidence. Therefore, we find this issue to be without merit.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT I ATTEMPTED RAPE AND SENTENCE OF TEN YEARS; COUNT II CONVICTION OF STATUTORY RAPE AND SENTENCE OF LIFE IMPRISONMENT; COUNT III CONVICTION OF ATTEMPTED RAPE AND SENTENCE OF TEN YEARS TO RUN CONCURRENTLY WITH THE SENTENCES IN COUNTS I AND II, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. THE SENTENCES IMPOSED SHALL RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.