# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00962-COA

**DONALD QUINN A/K/A DONALD RAY QUINN**  APPELLANT

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/27/2022 |
| TRIAL JUDGE: | HON. ADRIENNE ANNETT HOOPER-WOOTEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | ROBERT B. OGLETREE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JODY EDWARD OWENS II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 02/20/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., GREENLEE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.    A man was accused of sexual battery after his teenage niece became pregnant with his child.  Five years after his indictment, a jury trial was held.  Although the victim did not testify during trial, the man was convicted of sexual battery.  Finding the State failed to sufficiently prove venue, an essential element of the crime charged, we reverse and remand.

## FACTS

¶2.    In August 2015, Detective Sammy Neal of the Jackson Police Department "learned

that a sexual assault had taken place" involving a minor.[1]  As a result of the assault, she became pregnant.

¶3.    During the course of the investigation, the uncle of the minor, Donald Quinn, became a suspect.  At the time, Quinn was 43 years old.

¶4.    Shortly after Quinn's niece gave birth, Detective Neal obtained DNA swabs from Quinn, the victim, and her child for a paternal DNA test.  The test revealed that Quinn "could not be excluded as the biological father" of the child and that the "probability of the paternity is 99.999992 percent."  Quinn was subsequently indicted for sexual battery.

## PROCEDURAL HISTORY

¶5.    This case has a lengthy pretrial history spanning over 5 years between the indictment and trial.  While the authorities "learned of" the alleged assault in August 2015, Quinn was not indicted until February 2017.

### Untimely Disclosure of Birth Certificates

¶6.    When the case was finally ready to move to trial in July 2022, the Defense made two separate ore tenus motions to exclude evidence.  The motions were based on the State's untimely disclosure.  The first motion dealt with the birth certificates of Quinn, his sister, and his niece.  Arguing the State failed to disclose the birth certificates in discovery and only provided them the evening before trial, the Defense moved to exclude all the birth certificates.

¶7.    Considering the State had 5 years to procure and provide the birth certificates, the trial

---

[1] The victim was 17 years old.  Because of the nature of the crime charged, we decline to identify victims of sexual assault to prevent further victimization.

2

court questioned why the documents were now necessary evidence for trial. The State revealed that the victim was unavailable to testify. The State also explained that the victim's mother would not testify. As a result, the State was seeking to call Quinn's mother, Carolyn Smith, to establish the familial relationship between Quinn and the victim. Additionally, the State argued that since a birth certificate was a self-authenticating document, Quinn would not be prejudiced by its admission.

¶8. Because the State "had five years to get these documents" but instead chose to provide them to the Defense "on the eve of trial," the trial court ruled that the use of the birth certificates "would not be allowed in on direct." The documents could be used for impeachment purposes only.

*Testimony of the Defendant's Mother*

¶9. The Defense's second motion related to Carolyn Smith's testimony. Noting that Quinn's mother was "not listed on any witness or subpoena list" or "referenced in discovery as being questioned or giving a statement or being, otherwise involved, in the investigation," the Defense moved to completely exclude her testimony because of the alleged discovery violation.

¶10. The State responded, stating it issued a subpoena for Ms. Smith, but it "didn't transfer through MEC (Mississippi Electronic Courts) to the defense" due to a technical error. After looking at MEC and confirming the subpoena was not there, the trial court granted Quinn's motion to exclude the testimony of Ms. Smith. The trial court held it could not "allow [the State] to put the fault on the Circuit Clerk's Office" since the State "could have filed it just

3

as well."

¶11.    The next day, the State asked the trial court to reconsider the exclusion of Ms. Smith's testimony.  The State vouched her testimony would "only be offered for the limited purpose of [establishing] a family relationship."  The State argued the admission of her testimony would not prejudice Quinn, as "there would be no element of surprise" since he knew his family.

¶12.    The trial court relented and granted the State's motion, allowing Ms. Smith to testify for the limited purpose of establishing a family relationship.

*Exclusion of Victim's Statements*

¶13.    In considering the unavailability of the victim, the Defense also made an ore tenus motion to exclude any and all of her previous statements during trial.  The Defense argued the statements were hearsay and would violate the Confrontation Clause of the Sixth Amendment.

¶14.    Claiming the Defense's ore tenus motion was "so broad" it could impact the testimony of all its witnesses, the State addressed each witness individually.  First, the State briefly addressed a recorded interview of the victim by investigators with the Jackson Police Department.  The State conceded it would not attempt to introduce the interview into evidence.  Instead, it would only call the investigator to testify about the course of his investigation.

¶15.    Citing caselaw, the trial court ruled the investigators' testimony could not go into detail.

4

The Court: Counselor, I don't know what's going to come out on the stand, but what I will say is that the Investigator will not be able to testify to anything that he was told. The only thing that he would be able to testify about, as it relates to the allegations in this case, is what he observed and he didn't observe.

. . . .

The State: He has to be able to explain why he showed up.

The Court: He showed up because there was a complaint.

The State: And he has to be able to explain what the complaint was.

The Court: No, sir. Listen to me carefully. He can talk about what the complaint is, but he can't talk about anything *that was told to him* about the complaint.

(Emphasis added).

¶16. Next, the State addressed the second witness it intended to call—a medical doctor employed at University of Mississippi Medical Center. The State sought to admit the victim's medical records through the doctor's testimony, asserting any statements made by the victim were made for purposes of medical diagnosis or treatment, and so were not barred as hearsay. Additionally, the State argued because the statements for medical treatment were not testimonial in nature, Quinn's right of confrontation would not be violated.

¶17. The trial court determined the adversarial process against Quinn had already begun by the time the victim visited the doctor, and her visit resembled that of a "forensic consultation" for "investigatory purposes" as opposed to a visit for purposes of medical treatment or diagnosis. As such, under the facts of this case, the trial court concluded the medical records amounted to testimonial hearsay. Accordingly, they were excluded.

*The Trial*

5

¶18. The State called three witnesses at trial. First up was Detective Neal. He told the jury that he was the lead investigator in this case and had encountered both the victim and her mother as a result. After the detective was asked what he had "learned" from his investigation, but before he could give a full answer, the Defense objected to the testimony as hearsay.

¶19. Referencing the trial court's earlier ruling as to testimony from the victim, the Defense argued that while the investigator could certainly "testify to what he's personally observed," he could not "testify to what's in his files for what other people have given him." In response, the State asserted that as the lead investigator, "all of the evidence gathered comes to him," allowing him to testify about what he learned from the investigation.

¶20. The trial court overruled the Defense's objection, and the State continued to question the investigator.

> The State: What did you learn as a result of your investigation into these allegations?
>
> Detective Neal: I learned that a sexual assault had taken place on Crawford Street in Jackson, Mississippi, which Jackson is in Hinds County.

¶21. The investigator then testified that throughout the course of his investigation he "learned a possible suspect was [the victim's] uncle." The Defense objected once again on hearsay grounds. Counsel for Quinn argued that because the investigator stated "he learned," he essentially implied he came to know the information "through someone else who's not here testifying."

¶22. The State responded:

6

[T]he information he learned from the investigation, the date, the location, possible suspects, all of that is part of his investigation and it's all a part of the file. And that information, *we're not sure where he got it from*. It could have very well come from [the victim]. It could have come from the mother. It could have come from any other person who's worked on this case. . . . *We're not sure how he learned of it*.

(Emphasis added). The Defense protested that to "buy the State's argument" would be to render "the Confrontation Clause useless." The trial court ultimately sustained the objection and limited the investigator's testimony to "what he learned during the investigation," clarifying that his statements would not be used to "override the Confrontation Clause."

¶23.  The State proceeded with its questioning of the investigator. Detective Neal next testified he had charged Quinn with sexual battery because Detective Neal "learned his name . . . based upon some information that [he] received." The investigator went on to explain that he obtained swabs from the mouths of Quinn, the victim, and her child for the purposes of "paternal DNA testing."

¶24.  The jury also heard from George Schiro, the lab director at Scales Biological Laboratory in Brandon. Mr. Schiro testified he not only handles administrative and day-to-day tasks but also acts as a DNA technical leader and analyst.

¶25.  After being asked to explain what DNA is to the jury, the Defense objected, contending Mr. Schiro's testimony would be expert witness rather than lay. But since he was never designated as an expert by the State, the Defense argued he could not testify to or explain scientific concepts to the jury. Sustaining the objection, the trial court made clear Mr. Schiro could "not give expert testimony under any circumstances" since he was not designated as an expert before trial.

7

¶26.   Nonetheless, the State continued in its questioning of Mr. Schiro, including laying the foundation to admit him as an expert.  After attempting to tender him as an expert, the Defense objected, arguing he was not designated as an expert prior to trial or in the witness list received from the State.

¶27.   In response, the State asserted the designation "was done in October of '18" and  "sent to defense Counsel years ago," though "it may have been prior to them receiving the case." The trial court sustained the objection, prohibiting Mr. Schiro from testifying as an expert witness but allowing him to "testify about the results of the [DNA] testing."

¶28.   The State then moved to enter the test results into evidence, which the trial court admitted.  Mr. Schiro testified that after receiving swabs from Quinn, the victim, and her child, the lab ran "them through a process" that extracts and quantifies the DNA to "come up with a DNA profile."  Mr. Schiro further explained that a paternity index is "what we call a likelihood ratio. It's the likelihood of us seeing the profile in the child, if this particular individual, is the father of the child as opposed to some random individual."  He concluded:

> Based upon the observations and genetic systems that we tested, Donald Ray Quinn could not be excluded as the biological father of the Baby Boy.  The combine[d] paternity index, in this case, as I stated, is 13 million.  The probability of the paternity is 99.999992 percent.

¶29.   Lastly, the State called Carolyn Smith as an adverse witness. Ms. Smith testified that she has a son named Donald Ray Quinn, born in 1972, and identified him in the courtroom. She was then asked if she had a daughter, and she agreed.  But Ms. Smith said she could not remember her daughter's date of birth.

¶30.   To refresh her memory, the State attempted to show Ms. Smith her daughter's birth

8

certificate. Objecting to the use of the document, the Defense claimed a witness's memory could be refreshed only with "their own statements" or "their own prior information."

¶31. Noting the "past recollection recorded exception to the hearsay rule" is often confused with simply refreshing a witness's memory, the trial court clarified the latter "permits any writing, recording or object to be used, regardless of whether it is in compliance with the foundation requirements of the hearsay exception."

¶32. Nonetheless, the Defense argued the trial court's earlier ruling excluding the birth certificates precluded the State from utilizing the documents to refresh Ms. Smith's memory. The trial court overruled the Defense's objection and allowed the use of the birth certificate to refresh the witness's memory.

¶33. Continuing with its questioning, the State successfully refreshed Ms. Smith's memory as to the birth date of her daughter, who is Quinn's sister. She then testified the victim was her granddaughter, making her Quinn's niece. The State rested its case-in-chief.

*Defense's Motion for a Directed Verdict*

¶34. Subsequently, the Defense moved for a directed verdict, arguing the State failed to prove an essential element of its case. Specifically, the Defense argued the State failed to "present sufficient evidence to go to the jury, particularly, as to whether or not this crime took place in the First Judicial District of Hinds County."

¶35. To support its contention, the Defense noted "the only mention, from the witness stand, of the locations of an alleged assault, came from the lead Investigator." Citing caselaw, it further asserted that "proof of venue is an essential part of a criminal prosecution"

9

in which "the State bears the burden of proving . . . beyond a reasonable doubt." And "by the State's own argument," the investigator's testimony "was not being offered for the truth of the matter asserted" but merely to explain the course of his investigation. As such, the Defense argued, "[I]t is not substantive testimony," and, therefore, "one of the elements cannot survive the directed verdict."

¶36. In its case-in-chief the State had argued it used Detective Neal only to show the course of his investigation and was "not sure how he learned of it." But in responding to the directed verdict the State argued:

> Det. Sammy Neal testified that he responded to a complaint that occurred in the First Judicial District of Hinds County. He further said he, initially responded, to 133 Terrace and that he responded there and learned, as a result of his investigation, that the complaint occurred—that the sexual battery occurred on Crawford Street in Jackson, Mississippi. He testified to the location of the complaint.

¶37. The trial court noted its "responsibility" was to determine if "there is sufficient evidence for the jury to conclude that this offense occurred and that it occurred in Hinds County." Finding the investigator's testimony presented sufficient evidence for a jury to conclude the abovementioned, the trial court denied the Defense's motion for a directed verdict.

¶38. The jury ultimately found Quinn guilty of sexual battery. He was sentenced to 20 years in the custody of the Mississippi Department of Corrections, with 10 of those years suspended and 10 years to serve. He moved for a new trial or judgment notwithstanding the verdict, which the trial court denied. Quinn then appealed.

**STANDARD OF REVIEW**

10

¶39. "In reviewing the sufficiency of the evidence on appeal, 'we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime.'" *Johnson v. State*, 310 So. 3d 328, 331 (¶13) (Miss. Ct. App. 2021) (quoting *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017)). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements[;] [r]ather, we must decide whether a reasonable juror could rationally say that the State did." *Id.* (citation and internal quotation marks omitted).

## DISCUSSION

¶40. On appeal, Quinn raises six issues, including that his indictment was improperly amended, that the jury should not have heard from Quinn's mother, that her memory was improperly refreshed with hearsay documents, that the DNA evidence was not properly authenticated, that Detective Neal's testimony was inadmissible regarding proof of venue, and that the prosecutor made prejudicial statements in closing.

¶41. Because we find the issue of venue dispositive, we reverse and remand for a new trial. We discuss such other issues that might recur in a new trial. *See Robinson v. State*, 858 So. 2d 887, 891 (¶7) (Miss. Ct. App. 2003).

### I. The State failed to prove venue beyond a reasonable doubt.

¶42. Quinn first argues the State failed to prove venue beyond a reasonable doubt. Specifically, his argument focuses on the inability of Detective Neal or any other witness to provide the necessary proof to support a finding of venue in Hinds County.

¶43. "Article 3, Section 26, of the Mississippi Constitution provides that an accused has

11

the right to trial 'by an impartial jury of the county where the offense was committed.'" *Rogers v. State*, 95 So. 3d 623, 630 (¶23) (Miss. 2012) (quoting Miss. Const. art. 3, § 26); *see also* Miss. Code Ann. § 99-11-3 (Rev. 2015) ("The local jurisdiction of all offenses, unless otherwise provided by law, shall be in the county where committed.").

¶44. Our Supreme Court has long recognized that "proof of venue is an essential part of criminal prosecution, and the State bears the burden of proving venue beyond a reasonable doubt." *Hill v. State*, 797 So. 2d 914, 916 (¶10) (Miss. 2001) (quoting *Crum v. State*, 216 Miss. 780, 63 So. 2d 242, 244 (1953)). "Because 'venue is jurisdictional' in criminal cases, the issue may be raised for the first time on appeal." *Rogers*, 95 So. 3d at 630 (¶23) (quoting *Gillett v. State*, 56 So. 3d 469, 502 (¶91) (Miss. 2010)). Notably, "failure to prove venue necessarily results in a reversal of a cause." *Sandifer v. State*, 136 Miss. 836, 101 So. 862, 862 (1924).

¶45. The State can prove venue when a victim testifies as to where a defendant's acts of sexual battery occurred. *Hensley v. State*, 912 So. 2d 1083, 1086 (¶¶12-13) (Miss. Ct. App. 2005). In that case, the defendant "on several occasions . . . enticed [the victim] to play lewd games with him in exchange for candy or money." *Id.* at 1084 (¶4). A trial was held, and the defendant was ultimately convicted of "sexual battery for penetrating a child under the age of fourteen." *Id.* at (¶5).

¶46. The defendant appealed, claiming the State failed to prove venue because the victim "never stated that Hensley's criminal acts occurred within DeSoto County," and the family had "moved several times." *Id.* at 1086 (¶12). Noting that "[a]n appellate court can take

12

judicial notice on appeal that a certain city is located within a particular county," this Court took "judicial notice of the fact that Southaven, Walls, and Horn Lake are all located in DeSoto County." *Id.* at (¶13) (citing *Thomas v. State*, 784 So. 2d 247, 251 (¶14) (Miss. Ct. App. 2000)). That fact, coupled with the victim's testimony about the defendant's "repeated acts of sexual battery on her" and where "these acts took place," was sufficient to satisfy the State's burden of proving venue beyond a reasonable doubt. *Id.*; *see Smith v. State*, 646 So. 2d 538, 543 (Miss. 1994) (holding "review of the entire record show[ed] that the State proved venue conclusively" when an officer testified to being physically present where the incident occurred).

¶47. Of the three witnesses the State called, only one discussed the details of the crime underlying the indictment. This witness was Detective Neal. And the issue of venue was not discussed at all in the testimony of the DNA analyst, Mr. Schiro, or Quinn's mother, Ms. Smith. It was only during the State's questioning of Detective Neal that venue was briefly mentioned.

¶48. Yet the investigator's statements were restrained under a thick cloud of pretrial rulings, restricting what he could and could not discuss based on personal observations. While the investigator was permitted to "testify to what he[] personally observed," the trial court forbade him from testifying to "anything that he was told" by another person. To show the course of his investigation, the detective said he "learned that a sexual assault had taken place on Crawford Street in Jackson, Mississippi, which Jackson is in Hinds County." But Detective Neal did not say he personally visited the location or testify there was any physical

13

or circumstantial evidence present at that location. No other witness testified regarding venue at all. This bare remark was not competent evidence of venue.

¶49. Indeed, during trial the State admitted more than once regarding these details that it "not sure where he got it from" or "where he learned it from." By the State's own concession to the trial court, this information "could have very well come from [the victim]. It could have come from the mother. It could have come from any other person who's worked on this case." Yet the trial court had already expressly ruled that any statements by the victim were excluded to safeguard the defendant's constitutional right of confrontation. It can hardly be said the "State proved venue conclusively" when the only evidence the State provided was the testimony of an investigator who offered no basis for how he came to learn of anything about the location other than through possible multiple levels of hearsay or the expressly excluded statements of an absent victim.

¶50. An exact street address is not needed to establish proof of venue. *Cf. Hensley*, 912 So. 2d at 1086 (¶13) (taking judicial notice that a certain city is located within a particular county). Furthermore, our precedent has allowed an investigating officer's testimony to establish venue. *See Smith*, 646 So. 2d at 541. In that case, our Supreme Court affirmed a conviction for headlighting deer when there was testimony during rebuttal from the arresting officer "that the entire headlighting incident occurred in Pearl River County, Mississippi." *Id.* That testimony, plus proof in the State's case-in-chief on what road the crime occurred, provided enough competent evidence so the jury "could have possibly inferred that venue was established in Pearl River County" given what they knew of the local roads. *Id.*

14

¶51.    But we do not even have that level of proof in this record.  The State was not even clear where it was attempting to prove the alleged assaults occurred.  The first mention of any address was in the State's opening statement—that the evidence would show officers responded to "133 South Sunset Terrace."  Yet none of the State's three witnesses ever referred to the South Sunset address during the whole trial.  After being asked "what he learned" in the course of his investigation, Detective Neal did not refer to that address, instead responding he "learned" a sexual assault took place on "Crawford Street."  There was simply an absence of proof on this essential element, and no place upon which a jury could have based an inference of venue, as in *Smith*.[2]

¶52.    Proving venue in this trial was no doubt plagued by the immense passage of time since the date of the attack to trial, which spanned seven years.  The State was also under the challenging burden of proving its case without testimony from the purported victim or her mother, and it appears that the officer who actually responded to the call also did not testify.

---

[2] The separate opinion by Judge Lawrence focuses heavily on whether a contemporaneous objection to venue was made, contending it was waived.  But because venue is jurisdictional, it cannot be waived and indeed "may be raised for the first time on appeal."  *Rogers*, 95 So. 3d at 630.

The separate opinion is correct that it is the role of the fact-finders to determine whether the elements of a crime have been proved—including venue.  But such a finding must be based upon proof beyond a reasonable doubt.  The utter lack of competent evidence of venue in this case was revealed by the State's concession before the trial court that "the information [the detective] learned from the investigation, the date, the location, possible suspects . . . that information, we're not sure where he got it from.  It could have very well come from [the victim].  It could have come from the mother.  It could have come from any other person who's worked on the case."  In other words, the information could have come from someone else, but that person is someone who most certainly did not testify in the trial below.  And the equivocation from the detective on the stand that he "learned" that an assault took place can hardly rise to the level of beyond a reasonable doubt.

15

Zealous counsel for the Defense secured multiple rulings excluding prior statements from the victim or other absent witnesses and then safeguarded them via objection at trial. It is the rare case that can be supported by sufficient proof on all elements when these crucial witnesses are not present at trial and given these circumstances.

¶53. Our Constitution guarantees each person facing criminal charges a trial in the "county where the offense was committed." Miss. Const. art. 3, § 26. The bar to prove this essential element has remained the same for generations. "It is an easy matter to prove the venue in a criminal case ordinarily, and it is much safer to prove it by direct and positive evidence where that can be done." *Dorsey v. State*, 141 Miss. 600, 106 So. 827, 828 (1926). Because the State failed to provide any competent evidence upon which a rational juror could have found venue proven beyond a reasonable doubt, we reverse and remand for a new trial.[3]

> ## II. The trial court did not abuse its discretion by allowing the State

---

[3] We remand rather than render in accord with ample precedent. *See Fabian v. State*, 284 So. 2d 55, 56 (Miss. 1973) ("An acquittal solely on the ground of lack of venue would not constitute double jeopardy and bar prosecution in the county having venue."); *Jackson v. State*, 246 So. 2d 553, 554-55 (Miss. 1971) (reversing and remanding for a new trial because the State failed to prove venue); *Clark v. State*, 230 Miss. 143, 147, 92 So. 2d 452, 453 (1957) (holding that when a conviction is reversed for failure to prove venue, "the case should be reversed and remanded, not reversed and rendered"); *Crum*, 63 So. 2d at 244 (reversing and remanding when the State failed to prove "whiskey was actually found in the possession of the defendant in the said supervisor's district"); *Waldrup v. State*, 150 Miss. 302, 116 So. 432, 433 (1928) (noting "[v]enue is not to be presumed" and reversing and remanding when "the present record is wholly insufficient to establish venue"); *Sullivan v. State*, 136 Miss. 773, 101 So. 683, 683 (1924) (finding the State's failure to prove venue requires reversal and remand); Miss. Const. art. 3, § 22 (before double jeopardy attaches "there must be an actual acquittal or conviction *on the merits* to bar another prosecution") (emphasis added); *cf. Smith v. United States*, 599 U.S. 236, 254 (2023) (determining that the Double Jeopardy Clause of the United States Constitution does not bar retrial when a conviction is reversed due to improper venue, since improper venue does not adjudicate a defendant's culpability).

16

**to use birth certificates to refresh a witness' memory.**

¶54.    Quinn also argues the trial court erred by allowing the State to use birth certificates excluded from evidence to refresh a witness's memory.  Specifically, he contends that by allowing the State to refresh his mother's memory for "the sole purpose of establishing a family relationship . . . constitutes ambush, a discovery violation, and admission of improper evidence affecting [his] substantial right."

¶55.    "An abuse-of-discretion standard of review is applied to the trial court's admission or exclusion of evidence." *Murray v. Gray*, 322 So. 3d 451, 457 (¶14) (Miss. 2021) (citing *Hartel v. Pruett*, 998 So. 2d 979, 984 (¶10) (Miss. 2008)).

¶56.    Mississippi Rule of Evidence 612(a) "allows the questioning attorney to use *any* document or other item to try to jog or refresh the witness's memory or recollection." *Id.* at 466 (¶42) (emphasis added).  The Rule itself then places no limitation on what items may be used to refresh the memory of a witness.  Notably, "[a] document used to refresh a witness's recollection need not be admissible under the Mississippi Rules of Evidence." *Ervin v. State*, 136 So. 3d 1053, 1059 (¶17) (Miss. 2014).[4]

¶57.    Accordingly, we agree that it was not an abuse of discretion for the trial court to allow the witness's memory to be refreshed by the birth certificates, even though they were not

---

[4] While the items used to refresh the memory of a witness do not have to be admissible under the Rules of Evidence, generally birth certificates are admissible because they are excepted from the ban on hearsay. *See* MRE 803(9) (excepting "[a] record of a vital statistic, if reported to a public office in accordance with a legal duty"); MRE 803(9) advisory committee note (including "certified copies of birth and death" and "marriage records" as vital statistics).  Importantly, in this case the trial court excluded the birth certificates because of a discovery violation by the State, not because they were inadmissible.

admitted into evidence.

## CONCLUSION

¶58.    After a thorough review of the entire record and viewing the evidence in the light most favorable to the State, we find no competent evidence supporting the essential element of venue.  Accordingly, we reverse and remand for a new trial.

¶59.    **REVERSED AND REMANDED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS AND SMITH, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION, JOINED BY LAWRENCE, J.; BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McCARTY AND SMITH, JJ., JOIN IN PART.  LAWRENCE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J.; McDONALD, J., JOINS IN PART.**

**EMFINGER, J., CONCURRING IN RESULT ONLY:**

¶60.    While I concur with the majority opinion that Quinn's conviction should be reversed and the matter remanded for a new trial, I would do so for a different reason. At trial, the defense objected to George Schiro, the lab director for Scales Biological Laboratory in Brandon, being allowed to testify as a witness for the State due to an alleged discovery violation. The defense argued that it had not been given notice that the State would call Schiro to give expert testimony. After much argument, the trial court ruled that Schiro could not testify as an expert witness,[5] but he would be allowed to testify as to the results of the

___

[5] The trial court erroneously found that our rules of civil procedure concerning the designation of expert witnesses applied to criminal cases. The trial court did not apply Mississippi Rule of Criminal Procedure 17.2 in determining whether a discovery violation had occurred and did not utilize the procedure to address a discovery violation set out in Mississippi Rule of Criminal Procedure 17.9; *see also Walker v. State*, 340 So. 3d 335, 365-

18

DNA testing. The defense again objected and argued that if Schiro could not testify as an expert, he should not be allowed to testify concerning the DNA test and its results. Ultimately, the trial judge ruled:

> Okay. So with that being the case, I have yet to see any member of the State Crime Lab be designated as an expert witness to testify in this Court and Mr. Schiro is no different in that respect. Now, he will not be allowed to testify, along the lines of an expert witness, but he'll, certainly, be allowed to testify as to the results of the test, okay.

As a result of the trial court's rulings, Schiro was allowed to testify, as a non-expert, to the results of a DNA paternity test that showed a 99.99992% probably that Quinn is the father of his minor niece's child. The trial court committed reversible error in this regard.

¶61.   In *Bailey v. State*, 956 So. 2d 1016, 1029 (¶¶42-44) (Miss. Ct. App. 2007), this Court found:

> On appeal, Bailey submits that Detective Camel lacked the necessary expertise to testify as to the results of the DNA analysis performed on Bailey's clothing. Bailey claims that Detective Camel's testimony amounted to improper opinion evidence and a violation of Rule 702 of the Mississippi Rules of Evidence.
>
> Pursuant to M.R.E. 702:
>
> > If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
>
> **Undoubtedly, DNA comparison testing requires specialized knowledge,**

66 (¶¶105-06) (Miss. Ct. App. 2021); *Pope v. State*, 330 So. 3d 409, 421 (¶¶44-45) (Miss. Ct. App. 2021).

**skill, experience, training and education.** The prosecution did not submit or qualify Detective Camel as an expert witness. Accordingly, Detective Camel should not have been permitted to testify as to the results of the DNA comparison performed on Bailey's clothing.

Improper opinion evidence notwithstanding, again, a trial judge has wide discretion in ruling on the admissibility of testimony offered at trial, and we may not reverse that decision unless prejudice amounting to reversible error resulted. *Alexander v. State*, 610 So. 2d 320, 329 (Miss. 1992). After Detective Camel testified, the prosecution called Amrita Lal, a forensic technician employed by Reliagene in New Orleans, Louisiana. Ms. Lal performed the DNA comparison on Bailey's clothing. The prosecution submitted Ms. Lal as an expert witness. Bailey accepted Ms. Lal as an expert witness. Ms. Lal testified, "the blood stains on [Bailey's] clothing were consistent with—the DNA profile of the clothing were [sic] consistent with the DNA profile of Floricee Harris." Based on Ms. Lal's testimony, we find that the trial judge committed harmless error when he overruled Bailey's objection to Detective Camel's testimony.

(Emphasis added). This Court in *Bailey* found, without question, that testimony concerning DNA testing and the results of DNA tests require **"specialized knowledge, skill, experience, training and education,"** and such testimony must come from an expert witness. *Id.* at (¶43). Because Detective Camel was not qualified as an expert, this Court found that the trial court erred by allowing his testimony concerning the results of the DNA analysis. *Id.* However, because a DNA expert subsequently testified to the same result, our Court in *Bailey* found the error was harmless. *Id.* at (¶44).

¶62.    In the present case, after the trial court did not allow Schiro to testify as an expert, no expert witness would testify about the DNA testing and the results of the testing. This testimony Schiro gave is the only proof in the record that Quinn engaged in the "sexual penetration" of his niece. Because Schiro's testimony was admitted in error, I would reverse Quinn's conviction and remand the matter for a new trial.

**LAWRENCE, J., JOINS THIS OPINION. BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McCARTY AND SMITH, JJ., JOIN THIS OPINION IN PART.**

**LAWRENCE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶63. I agree with the majority opinion's finding that the trial court did not abuse its discretion by allowing the State to use birth certificates to refresh the memory of a witness. I disagree with the majority opinion that the State failed to prove venue, and therefore I respectfully concur in part and dissent in part.

¶64. The burden rests on the State to prove venue "beyond a reasonable doubt." *Schlepphorst v. State*, 201 So. 3d 517, 521 (¶18) (Miss. Ct. App. 2016) (citing *Lee v. State*, 910 So. 2d 1123, 1126 (¶10) (Miss. Ct. App. 2005)). At trial in this case, the State elicited the following testimony from Detective Sammy Neal with the Jackson Police Department:

> Q:  What did you learn as a result of your investigation into these allegations?
>
> A:  I learned that a sexual assault had taken place on Crawford Street in Jackson, Mississippi, which Jackson is in Hinds County.
>
> Q:  Is Jackson in the First Judicial District of Hinds County?
>
> A:  That is correct.

Quinn contends that this testimony, when offered by Detective Neal, was a multi-layered hearsay statement and was inadmissible based on a pre-trial motion-in-limine ruling. Quinn also raised this same issue in his motion for a directed verdict or, in the alternative, a new trial.

¶65. At a hearing on that motion for a new trial, the State argued the testimony at issue was

21

not improper because Quinn did not object to the question at trial. While the transcript was not available at this hearing, the trial judge stated that she did "not recall . . . a back and forth between the State and the Defense as it related to that question" regarding venue and, thus, ruled in favor of the State. Had the transcript been available, her result would have been the same, as the record clearly shows that no objections were made as to these two questions. Our caselaw is clear that "unless timely and specific objection is made to allegedly improper testimony, the objection is deemed waived and may not be raised on appeal." *Moss v. State*, 977 So. 2d 1201, 1208 (¶9) (Miss. Ct. App. 2007) (quoting *Hall v. State*, 691 So. 2d 415, 418 (Miss. 1997)).

¶66. Further, "[d]irect or circumstantial evidence may be used to prove venue." *Schlepphorst*, 201 So. 3d at 521 (¶18) (citing *Lee*, 910 So. 2d at 1126 (¶10)). And "[a]s long as the evidence is sufficient to lead a reasonable trier of fact to conclude that the crime in the present case occurred at least partly in [Hinds] County, then the evidence of venue is sufficient." *Hill v. State*, 797 So. 2d 914, 916 (¶12) (Miss. 2001). "Unobjected-to hearsay evidence, once received by the court and presented to the jury, becomes competent evidence and may aid in supporting a verdict the same as any other competent evidence." *Shaheed v. State*, 205 So. 3d 1105, 1110 (¶16) (Miss. Ct. App. 2016) (quoting *Veal v. State*, 585 So. 2d 693, 697 (Miss. 1991)). "Hearsay evidence, where admitted without objection, may properly be considered and given its natural and logical probative effect, as if it were in law competent evidence. Hearsay evidence admitted without objection may be regarded as sufficient to establish a fact in controversy." *Id*. (quoting *Burns v. State*, 438 So. 2d 1347, 1350 (Miss.

1983)). The State asked, "[W]hat did you learn **as a result of your investigation** into these allegations?" (Emphasis added). Detective Neal answered that he "learned that a sexual assault had taken place on Crawford Street in **Jackson, Mississippi, which Jackson is in Hinds County**." (Emphasis added). The State clarified, "Is Jackson in the First Judicial District of Hinds County?" Detective Neal confirmed that it is.

¶67. The testimony elicited by the State as to the crime occurring in Hinds County and, specifically, in the First Judicial District of Hinds County was sufficient for any reasonable juror to conclude that at least part of the crime occurred in that venue. "When an offense is committed partly in one county and partly in another, or where the acts, effects, means, or agency occur in whole or in part in different counties, *the jurisdiction shall be in either county in which said offense was commenced, prosecuted, or consummated*, where prosecution shall be first begun." Miss. Code Ann. § 99-11-19 (Rev. 2014) (emphasis added).

¶68. The elements instruction given to the jury in this case required the jury to find six different elements to convict Quinn. The first element listed in the jury instruction required the jury to find that the crime occurred not only within a certain time period but also that it occurred "in the First Judicial District of Hinds County, Mississippi[.]" This Court's precedent demonstrates that "[t]he role and function of an appellate court is materially different from the role and function of the jury." *McCarty v. State*, 247 So. 3d 260, 269 (¶25) (Miss. Ct. App. 2017) (citing *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983)). "Neither the Supreme Court nor the Court of Appeals sits as a thirteenth juror. We do not

23

make independent resolutions of conflicting evidence. Nor do we reweigh the evidence or make witness-credibility determinations." *Carter v. State*, 337 So. 3d 236, 247 (¶35) (Miss. Ct. App. 2021) (quoting *Little v. State*, 233 So. 3d 288, 292 (¶20) (Miss. 2017)). It is, therefore, the jury who ultimately found that the crime occurred in Hinds County. Once the trial court found sufficient evidence proving jurisdiction, the remainder of any disputed venue facts were for the jury to decide. Why would every elements instruction in every criminal case require a jury to determine if the crime occurred in the county charged if this issue was not for the jury? "Under Mississippi criminal procedure, questions of fact as to venue are for the determination of the jury and are not to be decided by the trial court." *Kidder v. State*, 326 So. 3d 1027, 1031 (¶10) (Miss. Ct. App. 2021) (quoting *State v. Fabian*, 263 So. 2d 773, 775 (Miss. 1972)). The detective testified he was investigating a "sexual assault in Hinds County." There were sufficient facts in the record to support the jury's factual determination of venue. For the foregoing reasons, I dissent as to this aspect of the majority opinion's holding.

**CARLTON, P.J., JOINS THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**